WITNESS INTERVIEW
ISSUE: TERMINATION – SEX DISCRIMINATION

**COMPLAINANT:** Bryant Graham
**RESPONDENT:** University of Indianapolis
**ICRC NO:** EMse18020098
**EEOC NO:** 24F-2017-00257
**WITNESS:** Ardella Burkes – Quest Director of HR      6/6/18
            630-627-7708

1. How long have you been employed by Quest?  **1 year June 2018**

2. Who conducted the investigation in the October 2017 of Complainant's alleged fraternization with a University student?

   **Acting GM (Jason Rosegay) took the initial report. Anything involving a student is not handled by Quest. The University's Title IX Coordinator (name unknown) conducted the investigation. The Coordinator then reported the findings to the GM Jason Rosegay. They don't give us the details because it's deemed confidential. The University determined fraternization had taken place but incident was not terminable. The Title IX Coordinator requested we create a fraternization policy which we did immediately.**

3. Who conducted the investigation into the February 2018 of Complainant's alleged fraternization with a University student?

   **Chef Bright was made aware of the allegations. The allegations were reported to the Title IX Coordinator who conducted an investigation and determined based on student and witness statement, sexual harassment and fraternization had taken place. (Witness states CP provided a statement after investigation concluded. CP admitted to ICRC during Intake that he did not submit statement until investigation ended and terminated.)**

4. Did you inform Complainant of his suspension pending an investigation?

   **Yes. And he also received a letter from the manager reiterating the reason for the suspension.**

5. Did you ask Complainant to provide a statement regarding the allegations? If so, did you give him a deadline for submission?

   **Yes, I asked him provide his statement right away because they are currently investigating him. He was reluctant to give a statement. The manager also asked him for a statement. When he called me, I told him that if he had something to say, this would be the time. He did not submit his statement until the investigation was over.**

6. Did Quest interview witnesses India Graves and Taylor Woods?

   **No, the Title IX Coordinator (name unknown) conducted the investigation because the report involved a student. Quest made its decision to terminate based on the report for the Title IX Coordinator.**

7. After Complainant's first suspension, or at any time during his employment, did you tell Complainant to be on his stuff because Respondent was going to try and get rid of him because management was upset he made a report with the Board of Health regarding the conditions of the universities kitchen.

   **No, those are not words that I would even use. I did have a conversation with him that he needs to be sure he watches what he says and does. Because he doesn't want anything to be construed as sexual harassment or fraternization. I was not aware he called the Board of Health.**

8. Is there anything else you'd like to add? **No.**

Mr. Burkes states this is 1st incident of fratrinization Quest has been aware of. CP's 1st incident is what prompted Quest to create "student Fraterinization Policy."

## WITNESS INTERVIEW
### ISSUE: TERMINATION – SEX DISCRIMINATION

**COMPLAINANT:** Bryant Graham
**RESPONDENT:** University of Indianapolis
**ICRC NO:** EMse18020098
**EEOC NO:** 24F-2017-00257
**WITNESS:** Sheila Deloney – Cashier   317-313-6725   5/16/18

1. How long have you been employed by Quest Food Management Services?

   **3 years Since 2015. I worked there before Quest got the contract. They kept me and made me a Quest employee (Complainant reported witness was a cook but she states she was a cashier.)**

2. Did you work with Complainant the entire time you were employed?

   **We worked the same hours but not the same department or area. Witness states she worked at the other end of cafeteria.**

3. How were you involved in the 2017 allegation that Complainant raped a student?

   **No. but I heard the rumors. Witness confirmed she was not interviewed by any member of mgmt. regarding allegation.**

4. Was the 2017 and 2018 complaint regarding the same student or a different student?

   **It was regarding a different student**

5. What knowledge do you have about his suspensions?

   **He told me he was suspended for inappropriate conversations and dealings with students**

6. What knowledge do you have about Complainant's terminations? **None.**

7. Is there a policy prohibiting staff from dating or being involved with students?

   **Totally against policy. We have to be leaders, we are not to put ourselves in that situation because we are adults. There is no fraternizing.**

8. Is there anything else you'd like to add? **No. I just wish him the best.**

# WITNESS INTERVIEW
## ISSUE: TERMINATION – SEX DISCRIMINATION

**COMPLAINANT:** Bryant Graham
**RESPONDENT:** University of Indianapolis
**ICRC NO:** EMse18020098
**EEOC NO:** 24F-2017-00257
**WITNESS:** Isiah Teague - Cook  314-475-4449   5/15/18

1. How long have you been employed by Quest Food Management Services?

   **July 2017 – January 2018.**

2. Did you work with Complainant the entire time you were employed? **July 2017 – January 2018.**

3. What knowledge do you have about suspension? **He was suspended twice for the same allegations (involvement with student) with the same student. They did an investigation but they never really asked everyone who worked on the team. The Chef and Head Chef questioned me but when the top people from Quest came down, they never investigated me." Mr. Graham worked the front line. Mr. Graham was by the book, the University tried to cut corners. The health department would come in ding them on stuff. The student would come to Graham's line and ask for him and flirt with him. They never had sex though. I didn't understand where the whole rape thing came about. The university was not involved in the investigation. In the beginning of this year I was not there for that incident.**

   Witness believes CP was suspended for about 2-3 weeks. It might have been longer.

   "They had gone on a date. Bryant didn't take the girl where she wanted to go so he took her back to where she stayed. About a week and a half after the date, the allegation came." To his knowledge, they only had the one date. (witness states)

4. Is there a policy about staff dating students? **There was never a policy. The only policy they did enforce was sexual harassment.**

## COMPLAINANT INTERVIEW
## ISSUE: TERMINATION – SEX DISCRIMINATION

**COMPLAINANT:** Bryant Graham      6/5/18
**RESPONDENT:** University of Indianapolis
**ICRC NO:** EMse18020098
**EEOC NO:** 24F-2017-00257

1. State your current address and current telephone number (or number where a message can be left for you.)

   Bryant Graham
   6657 Stanhope Drive
   Indianapolis, IN 46254
   Bryantgraham9611@gmail.com

### Quest Reports the following:

2. You met with Chef Bright and GM Jason Rosegay on 10/30/17 to confirm reports it received you were associating with a student. During your meeting you admitted that you'd asked the student in question out on a date. You picked her up at her home but, had to take her back home before the date started because she started her menstrual cycle in your car.

   **Yes, I told them I met her outside of the school. When they found out, the lady asked them what are they talking about? They put me on leave with pay while they investigate the report. I didn't know she went to the school when I met her.**

3. On 10/24/17 you came to Chef Bright on GM Jason Rosegay regarding rumors were being spread by an employee that you raped a student.

   **No I didn't. An employee told them a student told her I raped her.**

4. Quest also asserts you were never accused of raping a student. You were accused of sexual harassment and fraternization.

   **They accused me of sexually touching someone and a whole bunch of stuff. I made a lot of enemies when I took photos and stuff and got the health department involved.**

5. You were suspended with pay pending Quest's investigation into the report of your fraternization with a student. On 11/7/17, Quest President Nick Saccaro advised you to report back to work. When you didn't respond, Quest sent you a second notice on 11/9/17 to report to work. You reported to work that following week.

   **Yes I did.**

6. Upon your return, you were advised of Quests new policy implementation "Student Non-Fraternization Policy."

   **False. They told everyone about the policy about the mandatory meeting in January 2018 not when I returned in November 2017.**

7. On 2/7/18 Quest was notified by a University employee that it was reported you sexually harassed a University student. As a result of the report Ardella Burkes placed you on paid investigative leave until the investigation was completed. Respondent informed Quest there was evidence of sexual harassment and fraternization. Because you violated Quest's Harassment Policy and Student Non-Fraternization Policy, Quest made the decision to terminate your employment.

   **They couldn't even give me a date of when the incident allegedly happened. I was out of the country for 10 days. They tried to make it stick by getting several employee involved in this.**

   **CP informed I was unable to speak to witness Chef Jeff Birinhim because he hasn't returned my call (5/15/18). And witness Chef Bright stated he did not want to give a statement (5/16/18). CP advised to have Chef Jeff Birinhim contact me before 6/15/18 to give his statement.**

## COMPLAINANT REBUTTAL INTERVIEW
### ISSUE: TERMINATION – SEX DISCRIMINATION

**COMPLAINANT:** Bryant Graham   5/15/18
**RESPONDENT:** University of Indianapolis
**ICRC NO:** EMse18020098
**EEOC NO:** 24F-2017-00257

1. State your current address and current telephone number (or number where a message can be left for you.)

   **Bryant Graham**
   **6657 Stanhope Drive**
   **Indianapolis, IN 46254**
   **Bryantgraham9611@gmail.com**

**Respondent states the following:**

2. You were employed by Quest Food Management Services and assigned to University of Indianapolis. **Admit**

3. Quest's Director of Human Resources is Ardella Burkes and is not employed by Respondent. **Admit**

4. Although Respondent may have known about the allegation that you had been involved with a University student, Quest made the decision to suspend and terminate you employment. **I understand. Ardella told me the campus did an extensive investigation and found out that the information was true.**

5. Respondent cooperated in Quest's investigation of the allegation you were involved with a University student, however, it did not make the decision to suspend you or terminate your employment. **Ardella told me University of Indianapolis did an investigation. No one ever interview [interviewed] me. They couldn't even tell me when the allegations took place.**

6. During your employment, did you ever ask a student for their number? **No**

7. During your employment, did you ever ask a student to go to a concert or go out with you? **No**

8. During your employment did you ever come up behind a student and grab them from behind? **No**

9. Is there anything you'd like to add? **Quest sent me a statement because of Title 9 something, something, something. After my first suspension, Ardella came on campus and asked me what my attendance was like. She told me to be on my shit, because they are going to try and get rid of me. I was not liked at the job because I'm a little bit about the book. The management team was upset because I have pictures and recordings of the kitchen conditions and reported the University to the Health Department. Complainant will provide a copy of the Statement he received from Quest before 5/25/18.**

**Complainant provided the name and contact information for his witnesses:**

**Chef Jeff Birinhim 317-444-1950 witnessed Complainant's 2nd suspension**

**Executive Chef Scott Bright 765-464-4264 witnessed accusations and what was going On. In his first week at job, Chef Bright was accused of being involved with "being involved with a student (accused of touching a student).**

**Cook Sheila LNU 317-313-6725 witnessed both incidents. She was the person who initially accused Complainant of raping a student in November 2017.**

**Cook Isiah LNU 314-475-4449 witnessed everything**

## COMPLAINANT INTERVIEW
### ISSUE: TERMINATION – SEX DISCRIMINATION

**COMPLAINANT:** Bryant Graham        3/20/18
**RESPONDENT:** University of Indianapolis
**ICRC NO:** EMse18020098
**EEOC NO:** 24F-2017-00257

1. State your current address and current telephone number (or number where a message can be left for you.)

   Bryant Graham
   6657 Stanhope Drive
   Indianapolis, IN 46254
   Bryantgraham9611@gmail.com

2. What was the length of your employment? **August 3, 2017 – February 13, 2018**

3. What position did you hold at the time of your termination? **Started as Lead Cook and promoted to Sous Chef approximately November 2017.**

4. Who informed you of your termination? Give name, race, sex and position.

   **HR Director Ardella Burkes (female)**

5. What reason(s) was/were given for your termination? **She told me I was terminated because the allegations of raping a minor were confirmed.**

6. What previous discipline had you received and when? **The only other discipline I received was November 2017 when I was suspended with pay pending the first allegation of raping a minor. The investigation determined the allegations were false and I was reinstated.**

7. Is the person who hired you the same person who terminated you? **No. I was hired by the GM (a male)**

8. What other persons were terminated for this same reason? Give name, address, telephone number, sex, race and position held. **Not to my knowledge**

9. Does Respondent have a policy regarding employees interacting with students?

   **Yes, we are restricted from fraternizing between students and faculty.**

10. Were criminal charges filed against you? **No, not to my knowledge.**

11. Give the name, race, sex, position, address and telephone number of all witnesses to the incident(s) that led to your filing this complaint.

    **Complainant will have his witnesses contact me before March 30, 2018.**

12. What would you like to see happen as a result of filing your Complaint?

    **Compensation for lost wages.**

13. Why do you feel Respondent discriminated against you based on your sex?

    **Prior to being suspended, I had a meeting with Ardella, Executive Chef Scott Bright and GM Jeff Fell. During the meeting Ardella informed me about the 2nd allegations of sexually harassing and put my hands on someone. Ardella said "I have witnesses." I told Ardella that they failed the first time so now they are coming back a second time to make it stick.**

    **Ardella said it has nothing to do with "Quest this time." Quest is my employer who contracts with Respondent.**

14. Is there anything you'd like to add?

    **Once I filed a complaint with Corporate HR (Ardella) regarding pictures of potential health and safety issues regarding food service. After the complaint to the health department Ardella came to the school and personally pulled me to the side and said, "Bryant, they are going to try and get rid of you. Be on your shit. She asked me how my attendance was. I told her my attendance is good.**

    **If there was alleged or substantiated claims of rape, there are 4 different police on campus. Why weren't they involved and why was I not arrested. They just wanted to get rid of me.**